**DECLARATION OF CHARLES C. RAINEY IN SUPPORT OF
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**
(HEARING REQUESTED)

I, CHARLES C. RAINEY, the undersigned individual, hereby make the following declaration:

1. I am over the age of 18 and am otherwise competent to make this declaration.

2. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3. Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the statements made herein are true and correct, except for those matters qualified as stated under my informed belief, and, as to those matters, I believe them to be true.

4. I am the attorney of record for the Plaintiff in the above-captioned case, ME2 PRODUCTIONS, INC., a Nevada corporation.

5. The Plaintiff has hired other attorneys in other jurisdictions to file similar cases, such as Illinois, Oregon, Washington, Arizona, Colorado, and Texas, with whom I have been in contact, in an effort to coordinate our efforts in these cases and develop a set of best practices in anti-piracy litigation.

6. I am informed and believe that Plaintiff is the producer of the feature length motion picture, "Mechanic: Resurrection."

7. This belief is supported by the copyright registration for the motion picture on file with the United States Copyright office as well as the fact that the owners of the Plaintiff company are Trevor Short and Avi Lerner, both of whom are identified in the credits of the motion picture as its producers.

8. This case arises from the Plaintiff's discovery that its film, while still in theatrical release, had been pirated and illegally shared over peer-to-peer file sharing networks by countless users throughout the United States and throughout the world.

9. In an effort to track and identify the individual infringers responsible for the illegal copying and sharing of its motion picture, Plaintiff engaged the investigative services of

1

MaverickEye, a company organized and existing under the laws of Germany, with its principal address at Heilbronner Strasse 150, 70191 Stuttgart, Germany.

10. I am informed and believe that MaverickEye employed its software to surveil Internet traffic within the BitTorrent network to identify, analyze, archive and document unauthorized copying and distribution of the Plaintiff's motion picture.

11. The data provided by MaverickEye confirmed that the Defendants (originally identified in the present case as John and Jane Does) used BitTorrent client software to purposefully search for and intentionally copy and download unauthorized and infringing copies of the subject film.

12. To date, MaverickEye has identified 51,462,897 instances of infringement of the Plaintiff's motion picture worldwide, including 50,014 instances of infringement occurring within the State of Nevada.

13. The information provided by MaverickEye further confirmed that each Doe Defendant then made copies of the subject motion picture available for downloading by other BitTorrent users, thus willfully joining in a collective effort (known as "a swarm") to distribute infringing copies of the Plaintiff's motion picture to one another and countless other peers of the swarm for download and distribution during the period of infringement, resulting in the unauthorized, viral dissemination of the Plaintiff's motion picture.

14. However, prior to filing the present action, Maverickeye was only able to identify the individual infringers by their respective IP Addresses.

15. Using geo-location information, MaverickEye then indexed the data by jurisdiction, allowing Plaintiff's counsel access to the full database of infringements occurring within the State of Nevada.

16. Then, weighing a number of factors, I narrowed the pool of Defendants to the one to two percent (1-2%) of the most egregious infringers within each swarm; I cannot share in open Court at this time the specific factors that I rely upon to determine the most egregious BitTorrent users, since divulging such information would likely result in users manipulating their data to evade liability.

HAMRICK & EVANS LLP

17. . I then further separated out those egregious infringers within each swarm into yet smaller groups of approximately ten (10) to thirty (30) IP Addresses.

18. In each group of ten (10) to thirty (30) infringers, the identified IP Addresses were caught sharing the same digital file, containing the same copy of the Plaintiff's motion picture, over the same peer-to-peer file sharing network, as part of the same so-called "swarm," within the same jurisdiction, within the same finite period of time (usually a period of about two weeks).

19. In order to ensure the accuracy of the information collected, before filing any given lawsuit, I then transmitted the data sets related to the proposed Defendants to a third party consultant, Daniel Arheidt, to review and confirm.

20. I am informed and believe that Mr. Arheidt then reviewed the Defendant data provided by me, crosschecked such data against the database compiled by MaverickEye, and confirmed the accuracy of the information I provided.

21. Only after confirming the accuracy of the data with both MaverickEye and at least one independent consultant, do I move forward with any particular lawsuit.

22. On behalf of the Plaintiff, I filed the present case against a group of 21 Defendant IP Addresses on January 5, 2017.

23. Shortly thereafter, I promptly filed the Plaintiff's *ex parte* motion seeking to open discovery for the limited purpose of unveiling the true identities of the Doe Defendants.

24. The Court subsequently granted the Plaintiff's motion for discovery, and I then served a subpoena upon the Defendants' Internet Service Providers ("ISP").

25. Since receiving the subpoena response from the Defendants' ISPs, I have successfully narrowed the case from 21 to 11.

26. While I removed some Defendants from the case as a result of reaching settlement, still others I removed due to various circumstances unique to those Defendants.

27. If, upon further investigation, I discover that the situation of any given Defendant is distinctly different from the situation of other Defendants within a given case (raising distinct issues of fact or law), then I typically dismiss those individuals from the case; that said, it

HAMRICK & EVANS LLP

should be noted that the arguments raised by most defendants are generally quite similar; it is rare to find a defendant raising a distinctive issue of law or fact in its defense.

28. In some instances, I may abandon the Plaintiff's claims against a given Defendant, noting that the issues raised by the dismissed defendant provide a strong defense or make litigation impractical.

29. While in other instances, I may elect to dismiss a given Defendant from the case without prejudice, preserving the right to pursue that Defendant separately at a later date.

30. Likewise, if a Defendant answers the Complaint and at that time suddenly asserts unusual or distinctive arguments, it is my intent (and the intent of the Plaintiff) to sever such Defendants into a separate lawsuit.

31. To this end, I have consulted with other counsel on the prospect of severing Defendant Brian Kabala from Case No. 2:16-cv-2028; while most of Mr. Kabala's arguments are quite typical, he has taken a "kitchen sink" approach, which raises several immaterial issues that could unduly drive up the cost of litigation; my concern is that his litigation approach could cause his co-defendants to incur unnecessary costs; to that end, I am amenable to him being severed from Case No. 2:16-cv-2028.

32. However, it must be noted that Mr. Kabala's situation is distinct and rare.

33. Furthermore, I (under the direction of the Plaintiff) maintain a strict policy that if, in any case, a named Defendant requests that he/she be severed from a case and tried separately, I will not object or oppose any such request.

34. I am informed and believe that, while the Plaintiff has made this open offer to sever individual Defendants in cases throughout the country, not one Defendant has ever taken the Plaintiff up on the offer.

35. Finally, it should be noted that the Plaintiff has enacted a notice system throughout the United States that provides BitTorrent users with an early warning of possible litigation.

36. The notice system is operated through the Internet Service Providers, so that user identities are not revealed to the Plaintiff prior to litigation.

HAMRICK & EVANS LLP

37. Under the notice system, when the Plaintiff's expert identifies an infringing IP Address, it dispatches an email notice to the ISP associated with that IP Address, and the ISP then forwards that email notice to the individual Internet subscriber, notifying him/her of the infringement and the risk of possible litigation.

38. In each of the cases brought on behalf of the Plaintiff, where the infringement occurred on or before September 1, 2016, the subscriber would have received at least one email warning in advance of the Plaintiff filing suit.

39. Further affiant sayeth naught.

Dated this 18th day of May, 2017.

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723

HAMRICK & EVANS LLP