CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ME2 PRODUCTIONS, INC., a Nevada corporation, | ) Case No.: 2:17-cv-00724-JCM-NJK |
| Plaintiff, | ) |
| vs. | ) |
| MIKIYAS BAYU, ANDRE HURST JR.; LOUIE YANG; JOHN THOMAS; SHERREE RAY; DANIELA GUTIERREZ; RONALD CARNEY; STARLINA FLOWERS; CAROLYN WILBER; MIGUEL PALOMARES; JERMAINE WOOTEN; NENG CHUANG TAN; MARIA GUZMAN, | ) |
| Defendants. | ) |

**PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE NANCY KOPPE'S**

**REPORT AND RECOMMENDATIONS**

**(ORAL ARGUMENT REQUESTED)**

Plaintiff ME2 PRODUCTIONS, INC. ("Plaintiff"), by and through its counsel, Charles Rainey, Esq. of HAMRICK & EVANS LLP, hereby OBJECTS to the REPORT AND RECOMMENDATIONS entered by Magistrate Judge Nancy Koppe on June 14, 2017 [Dkt. No. 17] (the "R&R").    In the following points and authorities, Plaintiff argues the following points:

　　　1.　　The Magistrate incorrectly argues that the majority of courts within the Ninth Circuit have held that joinder of BitTorrent Defendants is improper, when, in

HAMRICK & EVANS LLP

i

fact, the current prevailing practice of a majority of Courts within the Ninth Circuit (and throughout the United States) is to allow joinder in BitTorrent cases;

2. The Magistrate relies principally upon the "persuasive authority" of a 2012 case from Arizona – a case that is not only easily distinguishable from the present case, but is, in fact, no longer followed in Arizona; indeed, Arizona openly allows joinder in BitTorrent cases, such as the one at hand;

3. The Magistrate's assertion that claims against participants in a BitTorrent "swarm" fail to meet the standard of arising out of the same series of transactions or occurrences is circular and logically flawed; and

4. The Magistrate fails to offer any meaningful policy rationale for her decision, which is troubling, given the overwhelming policy favoring joinder.

Make no mistake: severing the Defendants in the manner argued for in the pending R&R would be contrary to the interests of not only the Plaintiff, but also the Court and the Defendants. No one wins. There is no sound policy behind this blanket ban on joinder in BitTorrent cases. This objection is based upon the memorandum of points and authorities attached hereto, any attachments thereto, the pleadings and papers on file, and any arguments to be had at any hearing of this matter. A supporting declaration of Plaintiff's counsel, Charles C. Rainey ("Rainey Decl."), is submitted herewith, averring as to certain facts and procedural history related to the above-captioned matter and further declaring the truth and accuracy of Exhibit "**A**" through "**AM**," providing the Court copies of certain unpublished orders, pleadings, dockets, and related papers, referenced in the attached Memorandum of Points and Authorities.

///
///
///
///
///
///
///

HAMRICK & EVANS LLP

1    **PLEASE TAKE NOTICE** that the legal arguments set forth in the attached

2    memorandum of point and authorities shall apply to all cases involving the Plaintiff that are

3    currently before this Court, including, without limitation, cases 2:17-cv-00724-JCM-NJK; 2:16-

4    cv-02513-JCM-NJK; 2:16-cv-02657-JCM-NJK; 2:16-cv-02662-JCM-NJK; 2:16-cv-02783-

5    JCM-NJK; 2:16-cv-02384-JCM-NJK; 2:16-cv-02788-JCM-NJK; 2:16-cv-02563-JCM-NJK;

6    2:16-cv-02799-JCM-NJK; 2:17-cv-00121-JCM-NJK; 2:17-cv-00122-JCM-NJK; 2:17-cv-

7    00123-JCM-NJK; 2:16-cv-02660-JCM-NJK; 2:17-cv-00126-JCM-NJK; 2:16-cv-02875-JCM-

8    NJK; 2:17-cv-00665-JCM-NJK; 2:17-cv-00666-JCM-NJK; 2:17-cv-00676-JCM-NJK; 2:17-cv-

9    00722-JCM-NJK; 2:17-cv-00049-JCM-NJK; 2:17-cv-00723-JCM-NJK; 2:17-cv-00124-JCM-

10   NJK; 2:16-cv-02520-JCM-NJK; 2:17-cv-00114-JCM-NJK; and 2:17-cv-00667-JCM-NJK

11   *Respectfully submitted June 27, 2017*

12
13                          HAMRICK & EVANS LLP

14                          _____/s/ Charles C. Rainey_____
                            CHARLES C. RAINEY, ESQ.
15                          Nevada Bar No. 10723
                            crainey@hamricklaw.com
16                          7670 W. Lake Mead Blvd., Ste. 140
                            Las Vegas, Nevada 89128
17                          +1.702.425.5100 (ph)
                            *Attorney for Plaintiff*

18
19
20
21
22
23
24
25
26
27
28

HAMRICK & EVANS LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.     **INTRODUCTION** ..................................................................................................... 1

II.    **FACTUAL AND PROCEDURAL BACKGROUND** ...................................... 4

III.   **NINTH CIRCUIT CASE LAW IN BITTORRENT LITIGATION** ............................ 7

IV.    **LEGAL ARGUMENT** ............................................................................................ 9

      A.   **DEFENDANTS WERE PROPERLY JOINED PURSUANT TO FRCP 20(a)(2), GIVEN THAT DEFENDANTS DIRECTLY PARTICIPATED IN A BITTORRENT "SWARM", ILLEGALLY DOWNLOADING AND SHARING THE SAME COMPUTER FILE AMONGST THEIR SWARM CO-CONSPIRATORS.** ................................................... 10

           1.   *The Plaintiff's claims against the Defendants arise out of the same series of transactions/occurrences, because the Defendants acted in concert in a combined effort to commit multiple infringements of the Plaintiff's motion picture.* .......................................................... 10

           2.   *The Plaintiff's claims against the Defendants turn upon the same questions of law and fact, accusing each of the Defendants of the same, identical tortious conduct: copyright infringement.* ..................... 14

      B.   **ALLOWING JOINDER IN THIS CASE COMPORTS WITH PRINCIPALS OF FUNDAMENTAL FAIRNESS AND POSES NO PREJUDICE TO ANY PARTY IN THIS CASE.** ........................................ 15

           1.   *Joinder is in the interests of the Court, the Plaintiff and, most notably, the Defendants; severing the Defendants does nothing but prejudice the rights of the various parties.* ................................. 16

                a)   *Joinder serves the interests of the Court* ..................................... 17

                b)   *Joinder serves the interests of the Plaintiff* ................................. 19

                c)   *Joinder serves the interests of the Defendant* ............................. 20

           2.   *The Concern of Defendants asserting disparate defenses and factual arguments is misplaced and premature; the more efficient and effective approach is to wait for Defendants to enter an appearance and only sever those that raise distinctive issues.* ..................................... 22

           3.   *While the Court's Concern over cyber-piracy plaintiffs engaging in coercive tactics is reasonable, there is no evidence of such conduct on the part of the Plaintiff in this or any other case, and eliminating joinder actually does nothing to address this concern.* ............................. 23

V.     **CONCLUSION** ..................................................................................................... 26

HAMRICK & EVANS LLP

TABLE OF AUTHORITIES

## CASES OF THE UNITED STATES SUPREME COURT

*Marbury v. Madison*, 5 U.S. 137 (1803). ........................................................................... 1, 16

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ........................................ 10

## CASES OF CIRCUIT COURTS OF APPEALS

*AF Holdings LLC v. Doe*, 752 F.3d 990, 998 (DC Cir., 2014) ................................... 12, 19

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 889 (8th Cir., 2012) ...................................21

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.2000) ......................................9

*Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) .....................................................10

*Desert Empire Bank v. Insurance Co. of N. Am.*, 623 F.2d 1371 (9th Cir. 1980) ......................15

*Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610–11 (7th Cir. 2002) ..............................22

*In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) ..............................................11, 12, 13

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir., 1977).10, 11

*Mosely v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974). ...................................... 10, 11

*Sony BMG v. Tenenbaum*, 719 F.3d 67 (1st Cir., 2012).............................................21, 22

*Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir., 2013)....................................... 10

## CASES OF THE UNITED STATES DISTRICT COURTS

*Arista Records, LLC., et al, v. Does 1-9*, No. 2:08-cv-01655-JAM-JFM (E.D. Cal. July 22, 2008) ..............
.................................................................................................................... N. 17, Ex AL

*Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) ......................................11

*Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989) ...........................11, 14

*BMG v. Cox*, 1:14-cv-01611 (E.D.VA., Dec. 17, 2015)........................................22, Ex A

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 341 (D.D.C. 2011).........................19

*Cell Film Holdings v. Does 1-10*, 1:16-cv-00441-DKW-KSC (HI, Aug, 10, 2016)...............16, n.26, Ex B

*Cell Film Holdings v. Does 1-12*, 1:16-cv-01216-CCE-JLW (M.D.NC., Oct. 24, 2016)...............16, Ex C

*Clear Skies Nevada, LLC v. Doe-98.232.166.89*, No. 3:15-cv-02142 (D.Or., 2016).......................21, Ex D

*Cobbler Nev., LLC v. Does 1-28*,  No. 15-C-7538 (N.D. Ill, Jan 15, 2016)....................................15, Ex E

*Cook Productions v. Does 1-10*,  5:16-cv-00924-D (E.D.NC., Dec. 22, 2016) .............................. 16, Ex F

*Cook Productions v. Does 1-11*, 3:16-cv-00773-JD-MGG (N.D. IL., Dec. 5, 2016) .....................16, Ex G

*Cook Productions* v. Does 1-8, 1:16-cv-00637-BMK-NONE (HI, Dec. 12, 2016).....................16, Ex H

*Dallas Buyers Club, LLC v. Does*, 14-cv-1684 (W.D. WA., October 31, 2014) .............................. 24, Ex I

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012)..............................12, 15, 20, 23

*Dragon Quest Prods., LLC v. Does*, 2013 U.S. Dist. LEXIS 83683 (D.N.J., 2013)...........................18, 24

*Elektra Entertainment Group, Inc.,et al, v. Does 1-30,* No. 3:07-CV-01703-H-JMA (S.D. Cal. Sep14, 2007) ...............................................................................................................n. 17, Ex AK

*Elf-Man, LLC v. Does 1-152*, Case No. 13-cv-0507 (W.D. WA., March 26, 2013)......................... 24, Ex J

*First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241 (N.D. Ill. 2011) ...................................... 17

*Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150 (N.D. Cal., 2011) ........................... 18

*In re Adult Film Copyright Infringement Litig.*, 2012 U.S. Dist. LEXIS 41260 (SDNY, Mar. 26, 2012).. 12

*John Wiley & Sons, Inc.*, 2013 U.S. Dist. LEXIS 36359 (SDNY, 2016)........................................ 13

*Kill Joe Nevada, LLC v. Does 1-99,* 2013 U.S. Dist. LEXIS 74988 (N.D. Ga., 2013)........................... 18

*LHF Prods., Inc. v. Does 1-20,* 2016 WL 7423094 (E.D. Va. Dec. 22, 2016) ................................... 3

*LHF Productions v. Does 1-27*, 2:16-cv-01219-DBP (UT, Dec. 8, 2016)................................. 16, Ex K

*LHF Productions v. Does 1-21*, CV16-2632 PHX DGC, Dkt. No. 8 (Ariz., Sep. 6, 2016)............................
.....................................................................................................................n. 9, n. 20, Ex Z

*LHF Productions v. Does 1-21*, CV16-2632 PHX DGC, Dkt. No. 9 (Ariz., Sep. 12, 2016)..........................
.....................................................................................................................n. 9, n. 20, Ex AA

*LHF Productions v. Does 1-21*, CV16-2632 PHX DGC, Dkt. No. 10 (Ariz., Sep. 21, 2016).......................
.....................................................................................................................n. 9, n. 20, Ex. AB

*Liberty Media Holdings, LLC v. Does 1-62,* 11-cv-575-MMA (NLS) (S.D.Cal, Feb. 24, 2012).................
.....................................................................................................................n. 17, Ex AH

*Liegey v. Ellen Figg, Inc.*, 2003 U.S. Dist. LEXIS 9898, at *6 (S.D.N.Y. June 11, 2003)....................... 11

*Malibu Media LLC v. Doe,* 2012 U.S. Dist. LEXIS 189311 (E.D. MI., 2012) ........................... 18, 19, 24

*Malibu Media v. Doe,* 2013 U.S. Dist. LEXIS 59278, at 21 (D. Colo. Feb. 12, 2013)............................ 24

*Malibu Media, LLC v. Doe,* 2012 U.S. Dist. LEXIS 165525 (D. Colo. Oct. 25, 2012)........................... 24

*Malibu Media, LLC v. Doe,* 2012 U.S. Dist. LEXIS 170987 (N.D. Ind. Dec. 3, 2012)............................ 17

*Malibu Media, LLC v. Doe, 285 F.R.D. 273, 277 (S.D.N.Y. 2012)*................................... 13, 18, 23, 24, 25

*Malibu Media, LLC v. Doe,* 291 F.R.D. 191 (N.D. Ill. 2013) .................................................. 16, 20

*Malibu Media, LLC v. Fitzpatrick*, No. 1:12-cv-22767 (S.D. Fla. Oct. 22, 2012)........................... 21, Ex L

*Malibu Media, LLC v. Lee*, No. 12-cv-03900 (D.N.J. May 22, 2013) .................................... 15, Ex M

*Malibu Media, LLC v. Weaver*, No. 8:14-cv-01580 (M.D. Fla. Apr. 8, 2016) ...........................21, Ex N

*Malibu Media, LLC*, No. 7:12-cv-03810-ER, ECF No. 5 at 12 (SDNY, 2013)...............................23, Ex O

*ME2 Productions, Inc., v.Does 1-27*, No. 2:17-cv-00210-DGC (D. Ariz. Feb 14, 2017)...........................
.....................................................................................................................n. 10, n. 16, Ex AC

*ME2 Productions, Inc., v. Does 1-27*, No. 2:17-cv-00210-DGC (D. Ariz. Mar. 9, 2017)..........................
.....................................................................................................................n. 10, n. 16,Ex AD

*ME2 Productions Inc.,* No. CV-17-00210-PHX-GMS (D. Ariz. Mar. 28, 2017)............ n. 10, n. 16, Ex AE

*ME2 Prods., Inc. v. Does 1-14,* 2016 WL 6948333 (N.D. Ga. Nov. 28, 2016). ................................... 3

*ME2 Productions v. Does 1-10,* 3:16-cv-00702-JHM-DW (W.D.KY, Jan 9, 2017) ...................... 16, Ex P

*ME2 Productions v. Does 1-12,* 2:16-cv-01955-RSL (W.D.WA., Dec. 28, 2016)........................16, Ex Q

*ME2 Productions v. Does 1-13,* 5:16-cv-00083-EKD (W.D.VA, Dec. 19, 2016)........................16, Ex R

*ME2 Productions v. Does,* 1-14, 2:16-cv-01062-JLG-EPD (S.D.OH., Nov. 8, 2016) ................................
.....................................................................................................................15, Ex S

HAMRICK & EVANS LLP

*Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 170 (S.D.N.Y. 2012) .............................. 18, 20, 23

*On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500 (N.D. Cal., 2011) ...................................................... 18

*Paramount Pictures Corp. v Davis*, 2006 WL 2092581 (E.D. PA, July 26, 2006) .................................... 22

*Patrick Collins v. Does* 1-15, No.11-cv-02164-CMA-MJW (D. Colo. Feb. 8, 2012) ...................................
......................................................................................................................................................... 15 , Ex T

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 15938 ........................................................................ 20

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 192277 (N.D. Fla. Oct. 16, 2012) ........................... 14

*Patrick Collins, Inc. v. Doe*, 282 F.R.D. 161, 168 (E.D. Mich. 2012) ............................................... 13, 16

*Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich., 2012) ........................... 16, Ex U

*Purzel Video GmbH*, 2013 U.S. Dist. LEXIS 179738, at 13 (N.D. Ill., 2013) ........................................... 14

*Raw Films, Ltd. v. Does*, 2012 U.S. Dist. LEXIS 41645 (E.D. Pa. Mar. 23, 2012) ..................................... 17

*Robinson v. Geithner*, 1:05-cv-01258, (E.D. Cal., Jan. 10, 2011) .............................................. 10, Ex V

*TCYK, LLC v. Doe*, 2014 U.S. Dist. LEXIS 21026 (N.D. Ill. Feb. 20, 2014) ............................................... 17

*Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493 (D. Ariz. 2012) ...................................................... 6

*Thompsons Film, LLC v. Doe*, 2013 LEXIS 112129 (W.D.WA. Aug. 7, 2013) ........................... 15, 20, 21

*The Thompson Film, LLC, v. Does 1-35*, No: 13-CV-0126-TOR (D. Wa. July 12, 2013) ............ 12, Ex AJ

*Voltage Pictures, LLC v. Doe*, 818 F. Supp. 2d 28 (D.D.C. 2011) ............................................................. 17

*Voltage Pictures, LLC v. Revitch*, No. 6:14-cv-00301 (D. Or. Jan. 23, 2015) ........................ 21, 22, Ex W

*Waterfall Homeowners Ass'n v. Viega, Inc.* No. 2:11-cv-01498-JCM-GWF (D. Nev., Jan. 30, 2012) .........
..................................................................................................................................................... 11, Ex X

## STATUTES

17 U.S.C. § 512 ....................................................................................................................................... n. 29

## RULES

Fed. R. Civ. P. 1 .................................................................................................................................. 10, 19

Fed. R. Civ. P. 19 .................................................................................................................................. 9, 15

Fed. R. Civ. P. 20 ............................................................................................................................... *passim*

## OTHER AUTHORITIES

THE ECONOMIC IMPACTS OF COUNTERFEITING AND PIRACY, FRONTIER REPORT, 2017;
http://www.inta.org/Communications/Documents/2017_Frontier_Report.pdf, ......................................... n.1

HAMRICK & EVANS LLP

### MEMORANDUM OF POINTS AND AUTHORITES

## I.   INTRODUCTION

Severing the Defendants from this case, as suggested by Judge Koppe in her pending Report and Recommendations (the R&R), would:

> (i) substantially and needlessly increase the administrative burden and cost imposed on not only the Plaintiff, but also the individual Defendants and the Court;
>
> (ii) likely increase the final dollar amount of judgment awards entered against individual Defendants;
>
> (iii) severely diminish the intellectual property rights of the Plaintiff; and
>
> (iv) ultimately do nothing to further the interests of justice or the law.

Furthermore, to the extent that severing the Defendants may set a precedent that deters future cyber-piracy litigation (*e.g.*, rendering anti-piracy litigation so costly and administratively burdensome that copyright owners refrain from enforcing their rights), the Court would be playing directly into the hands of BitTorrent users, allowing their infringing activities to continue undeterred, while causing substantial damage to the entertainment industry and our economy as a whole. It would essentially serve as an abdication of judicial authority from the Court – a move that would compromise the rule of law and fly in the face of two centuries of jurisprudence. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 4 U.S. 137, 163 (1803).

Digital piracy, and in particular BitTorrent piracy, costs our economy billions of dollars each year.[1] Meanwhile, despite the ubiquitous presence of lawful streaming sites, like Netflix and Hulu, BitTorrent use is growing.[2] Plaintiff is simply one of the many victims of this piracy. Capture data collected by the Plaintiff's expert evidences that its motion picture "Mechanic 2: Resurrection" was pirated 51,462,897 times worldwide, 8,545,313 times in the United States, and 50,014 times in Nevada alone. Even if we assume that only a third of BitTorrent users

HAMRICK & EVANS LLP

---

[1] THE ECONOMIC IMPACTS OF COUNTERFEITING AND PIRACY, FRONTIER REPORT, 2017; http://www.inta.org/Communications/Documents/2017_Frontier_Report.pdf, (Digital piracy in Film: $160b in 2013, projected to as much as $644b in 2022. P.7; "It seems straightforward to attribute BitTorrent as responsible for these negative developments." P. 24).

[2] *Id*.

would have lawfully purchased the Plaintiff's motion picture or viewed it in theaters, the foregoing capture data evidences a direct estimated loss of USD$137,234,392 in gross revenue,[3] which happens to be roughly twenty million more than the film's total, combined, worldwide box office receipts. These cases are not frivolous; they are essential to the preservation of our nation's intellectual property laws.

In an effort to combat the rampant piracy of its motion picture, the Plaintiff sought to enforce its copyrights through its only available avenue – through litigation. However, even adding together all of the defendants in all of the suits filed by the Plaintiff throughout the United States, those defendants represent a miniscule share of the total infringements of its copyrights occurring nationwide.[4]

If these cases seem administratively burdensome, this is not the fault of the Plaintiff. The Plaintiff is merely attempting to police its intellectual property rights in the only way it can. It is not the Plaintiff's fault that the Defendants have collectively chosen to use a decentralized file-sharing network, deliberately designed to frustrate enforcement efforts – a system designed to make litigation difficult and burdensome.

Meanwhile, Plaintiff has taken great pains to find the most efficient and effective means of pursuing its claims without unduly prejudicing the rights of individual defendants (or prospective defendants, for that matter). The process presently employed is as follows: (1) identify separate swarms of infringing IP Addresses; (2) out of those IP Addresses, further identify the 1-2% most egregious offenders; (3) file suit against the most egregious offenders in each swarm in sets of 10-30 Does per case; (4) once the Defendants are identified, through settlement and investigation, further narrow the pool of Defendants in each case down to ten or fewer; and (5) to the extent that any defendant raises a distinct defense or cause of action, <u>sever only that Defendant into a separate case and leave the remaining Defendants</u>.

The process described above is designed to impose the least expense on all parties involved – including the Court.  To sever all Defendants, as contemplated in the R&R, would either result in a costly explosion of new lawsuits against single Doe defendants, or cause

---

[3] This calculation is assuming an average theater ticket price of $8.00.

[4] For example, in Nevada, the Plaintiff filed suit against roughly 1% of the total infringers in this State.

HAMRICK & EVANS LLP

1    Plaintiffs to forgo litigation in our jurisdiction, allowing Nevada's BitTorrent usage to continue

2    to grow undeterred.  Both of the foregoing options are contrary to the interests of justice and the

3    preservation of the rule of law.

4        In entering her R&R, Judge Koppe asserted that the "majority approach" in the Ninth

5    Circuit is to prohibit joinder in BitTorrent cases, seemingly basing her entire argument on this

6    assertion, reiterating it five (5) times throughout the R&R. However, that is simply not true.  The

7    position she argues for is NOT the majority approach in the Ninth Circuit.  In fact, the majority

8    of Courts within the Ninth Circuit have held the exact opposite of what is stated in the R&R;

9    they have held that joinder in BitTorrent cases is not only permissible but also good policy.  As

10   explained in more detail below, fifty percent (50%) of the District Courts in the Ninth Circuit

11   that have taken up this issue routinely allow joinder; thirty percent (30%) allow joinder

12   sometimes; and only twenty percent (20%) have prohibited joinder outright in these cases.[5]   For

13   the R&R to conclude that severance is the "majority approach" is just wrong.  While Judge

14   Koppe cites to numerous cases to support her argument, those cases are mostly out-of-date and

15   do not reflect the current approach in the individual jurisdictions.

16       For instance, Judge Koppe appears to rely heavily upon the reasoning set forth in a

17   2012 opinion from Judge Tielborb in Arizona.[6]   However, Arizona has largely abandoned the

18   approach taken in that case.  Indeed, the Plaintiff filed nineteen (19) cases in Arizona in 2016,

19   and joinder was granted in each and every case.[7]   In fact, Arizona's Judge Campbell, who

20   penned another opinion cited by Judge Koppe,[8] directly addressed this issue and ultimately

21   determined that joinder in the Plaintiff's cases was proper.[9]  To this end, the Arizona Court has

HAMRICK & EVANS LLP

---

[5] *Infra*, pp. 7-9.

[6] *Third Degree Films, Inc. v. Does 1-131,* 280 F.R.D. 493, 498 (D. Ariz. 2012); *See also* R&R at p. 4.

[7] *See* Exhibit "**AG**."

[8] *Riding Films, Inc. v. John Does I-CCL*, Case No. CV 13-00299-PHX-DGC, 2013 WL 2152552, at *3 (D. Ariz. May 16, 2013); *See also* R&R at p. 6, lines 13-16.

[9] *See LHF Productions v. Does 1-21,* Case CV16-2632 PHX DGC, Order to Show Cause, Dkt. No. 8 (Ariz., September 6, 2016), Exhibit "**Z**"; *see also* Case CV16-2632 PHX DGC, Memo Reg App of Riding Films, Dkt. No. 9 (Ariz., Sep. 12, 2016), Exhibit "**AA**"; *see also* Case CV16-2632 PHX DGC, Order, Dkt. No. 10 (Ariz., Sep. 21, 2016), Exhibit "**AB**".

1  actually begun consolidating these cases for purposes of streamlining discovery and reducing the

2  overall administrative burden.[10]

3       The following argument shows that: (i) the analysis of the R&R is based on an outdated

4  analysis of the prevailing case law that is logically unsound; (ii) the joinder of Defendants in the

5  Plaintiff's cases is not only proper under FRCP 20(a)(2), it is far and away the most efficient and

6  effective means of identifying and pursuing infringers, imposing the least possible burden upon

7  the Court and the Defendants.  To upturn this process, by requiring the Plaintiff to separately file

8  suit against each Doe defendant, serves no purpose other than to undermine the rule of law and

9  exponentially increase the administrative burden imposed upon the Plaintiff, the Defendants, and

10  the Court.  Everyone loses.

11  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

12       Plaintiff is the producer of the feature length motion picture, "Mechanic 2:

13  Resurrection."  Rainey Decl. at ¶¶ 6-7. This case arises from the Plaintiff's discovery that its

14  film, while still in theatrical release, had been pirated and illegally distributed over the

15  BitTorrent peer-to-peer file-sharing network by millions of users throughout the United States

16  and throughout the world. Rainey Decl. at ¶ 8.

17       In an effort to track and identify the individual infringers responsible for the illegal

18  copying and sharing of its motion picture, Plaintiff engaged the investigative services of

19  MaverickEye, a company organized and existing under the laws of Germany, with its principal

20  address at Heilbronner Strasse 150, 70191 Stuttgart, Germany. Rainey Decl. at ¶ 9.

21  MaverickEye employed its highly sophisticated software to surveil Internet traffic within the

22  BitTorrent network and thereby identify, analyze, archive and document unauthorized copying

23  and distribution of the Plaintiff's motion picture. Rainey Decl. at ¶ 10-11.    To date,

24  MaverickEye has identified 79,404,331 instances of infringement of the Plaintiff's motion

25  picture worldwide, including 113,962 instances of infringement occurring within the State of

26  Nevada. Rainey Decl. at ¶ 12.

27       The subject infringers (which includes the Defendants in this case) used BitTorrent

28

HAMRICK & EVANS LLP

---

[10] *See ME2 Productions v. Does 1-27*, Case 2:17-cv-00210-DGC, Motion to Consolidate, Dkt. No. 7 (Ariz., Feb. 14, 2017) Exhibit "**AC**"; *See also* Case 2:17-cv-00210-DGC, Mtn to Consolidate Add'l Cases (Ariz., Mar. 9, 2017) Exhibit "**AD**"; *See also* Case 2:17-cv-00210-DGC, Order (Ariz. Mar. 28, 2017) Exhibit "**AE**".

client software to search for, copy and download unauthorized and infringing copies of the Plaintiff's motion picture. Rainey Decl. at ¶ 13.  Each infringer then made those copies of the Plaintiff's motion picture available for downloading by other BitTorrent users, thus willfully joining in a collective effort (known as "a swarm") to replicate and distribute infringing copies of the Plaintiff's motion picture to one another as wells as tens of thousands of other peers within the swarm; this resulted in the unauthorized, viral dissemination of the Plaintiff's motion picture while it was still in theatrical release. Rainey Decl. at ¶ 13.

Using geo-location information, MaverickEye then indexed the data by jurisdiction, allowing Plaintiff's counsel access to the full database of infringements occurring within the State of Nevada. Rainey Decl. at ¶ 15. Then, weighing a number of factors, Plaintiff's counsel narrowed the pool of Defendants to the one to two percent (1-2%) of the most egregious infringers within each swarm. Rainey Decl. at ¶ 16. Plaintiff's counsel then further separated out those egregious infringers within each swarm into yet smaller groups of approximately ten (10) to thirty (30). Rainey Decl. at ¶ 17. In each group of ten (10) to thirty (30) infringers, the identified IP Addresses were caught sharing the same digital file, containing the same copy of the Plaintiff's motion picture, over the same peer-to-peer file sharing network, as part of the same so-called "swarm," within the same jurisdiction, within the same finite period of time (usually a period of about two weeks). Rainey Decl. at ¶ 18.

Still, in order to ensure the accuracy of the information collected, before filing any given lawsuit, Plaintiff's counsel transmitted the data sets related to the proposed Defendants to a third party consultant, Daniel Arheidt, to review and confirm. Rainey Decl. at ¶ 19.  Mr. Arheidt would then review the Defendant data provided by Plaintiff's counsel, crosscheck such data against the database compiled by MaverickEye, and confirm the accuracy of the information. Rainey Decl. at ¶ 20.  Only after confirming the accuracy of the data with both MaverickEye and at least one independent consultant, does the Plaintiff move forward with any lawsuit. Rainey Decl. at ¶ 21.

The Plaintiff filed the present case against just such a group of 21 Defendant IP Addresses on March 13, 2017. Doc No. 1 at Ex 1.  Shortly thereafter, the Plaintiff promptly filed its *ex parte* motion seeking to open discovery for the limited purpose of unveiling the true

HAMRICK & EVANS LLP

1   identities of the Defendants. Rainey Decl. at ¶ 23.   The Court subsequently granted the

2   Plaintiff's motion for discovery, and the Plaintiff then served a subpoena upon the Defendants'

3   Internet Service Provider ("ISP"). Rainey Decl. at ¶ 24.

4        Since receiving the subpoena response from the Defendants' ISP, the Plaintiff has

5   successfully narrowed the case from 21 to 13. Rainey Decl. at ¶ 25.  While the Plaintiff removed

6   some Defendants from the case as a result of reaching settlement, still others were removed due

7   to various circumstances unique to those Defendants. Rainey Decl. at ¶ 26.   If, upon further

8   investigation, Plaintiff discovers that the situation of any given Defendant is distinctly different

9   from the situation of other Defendants within a given case (raising distinct issues of fact or law),

10  then the Plaintiff typically dismisses those individuals from the case. Rainey Decl. at ¶ 27.   In

11  some instances, the Plaintiff may abandon its claims against a given Defendant, noting that the

12  issues raised by the dismissed defendant provide a strong defense or make litigation impractical.

13  Rainey Decl. at ¶ 28.   While in other instances, the Plaintiff may elect to dismiss a given

14  Defendant from the case without prejudice, preserving the right to pursue that Defendant

15  separately at a later date. Rainey Decl. at ¶ 29.   Likewise, if a Defendant answers the Complaint

16  and at that time suddenly asserts unusual or distinctive arguments, it is the intent of the Plaintiff

17  that such Defendants be severed into a separate lawsuit. Rainey Decl. at ¶ 30.

18        On April 27, 2016, Judge Koppe, on her own initiative, ordered that the Plaintiff show

19  cause why the Defendants should not be severed.  This was one of a series of orders to show

20  cause issued in each and every one of the Plaintiff's cases.  Identical orders to show cause were

21  also ordered in every case filed by Plaintiff LHF PRODUCTIONS, which shares the same

22  counsel as the Plaintiff in this case.   The Court also issued an open invitation to all defendants,

23  not just in this case, but in all of the Plaintiff's cases, and all of the cases filed by LHF

24  Productions, encouraging the hundreds of defendants to file their own arguments.  Out of the

25  several hundred defendants in these BitTorrent cases, including several represented by counsel,

26  only one, Brian Kabala, filed anything.[11]

27        The Plaintiff responded to Judge Koppe's Order to Show Cause on May 18, 2017,

28  arguing that the standard set forth in her OSC had been broadly rejected by courts throughout

HAMRICK & EVANS LLP

---

[11] Case No. 2:16-cv-02028, Dkt. Nos. 55, 58 and 62.

the United States and was plainly bad policy.   Plaintiff also requested oral argument. However, the Court denied every one of the Plaintiff's 30+ requests for oral argument. Instead, the Court issued its Report and Recommendation in this matter on June 14, 2017 relying entirely on the pleadings.

Plaintiff now objects to that Report and Recommendations.

## III.   NINTH CIRCUIT CASE LAW IN BITTORRENT LITIGATION

The R&R sets out a jaw-dropping misstatement of the Ninth Circuit case law related to joinder in BitTorrent cases; contrary to what the R&R states, the majority of District Courts within the Ninth Circuit permit (and in some cases encourage)[12] joinder in BitTorrent litigation. In fact, the R&R relies heavily on the "persuasive authority" of an Arizona case from 2012;[13] however, Arizona openly embraces joinder in BitTorrent litigation.  Indeed, the Plaintiff has filed a total of nineteen (19) suits in Arizona, and the Court has granted joinder in each and every one of those cases.[14]   Moreover, Plaintiff's sister company LHF Productions, Inc. has filed Twenty (20) cases in Arizona, and the Court has accepted joinder in each of those cases as well.[15]   In fact, the District of Arizona has recently reversed course and sought to consolidate BitTorrent cases for purposes of discovery.[16]

Out of the fifteen District Courts within the Ninth Circuit, only two have taken the hardline approach argued for in the R&R: the Central and Northern Districts of California. While three other Districts, the District of Oregon and the Southern and Eastern Districts of California, struggle with the joinder issue, sometimes allowing joinder and other times not,[17] the remaining

HAMRICK & EVANS LLP

---

[12] *See e.g.*, *Thompsons Film, LLC v. Doe*, 2013 U.S. Dist. LEXIS 112129, at 6 (W.D. Wash. Aug. 7, 2013) ("Jointly litigating these claims also allows defendants, many of whom will undoubtedly proceed pro se, to pool resources, rely on arguments raised by other defendants, and/or benefit from the participation of retained counsel.").

[13] *R&R* at p. 4, lines 13-25, *quoting Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012).

[14] *See* Ex. AF.

[15] *See* Ex. AG.

[16] *See* Ex. AC, and AD, and AE.

[17] *See e.g.*, *Liberty Media Holdings, LLC v. Does 1-62*, Case No. 11-cv-575-MMA (NLS), Order re: Motions to Quash Subpoena and Dismiss (S.D.Cal, Feb. 24, 2012) Ex. "**AH**"; *see also Arista Records v. Does 1-9*, 2:08-cv-1655-JAM-JFM, Order Granting Ex Parte Application (E.D.Cal, July 22, 2008) Ex. "**AM**"; *see also Elektra Entertainment v. Does 1-30*, 3:07-cv-01703-H-JMA (Sep. 14, 2007) Ex. "**AL**."

Districts that have dealt with this issue (5 in total) currently allow joinder in Cyber-Piracy cases such as the one at hand.[18]

In summary: fifty percent (50%) of the District Courts in the Ninth Circuit faced with BitTorrent litigation routinely allow joinder; thirty percent (30%) allow joinder sometimes; and only twenty percent (20%) have outright prohibited joinder in the manner prescribed by the R&R.   For the R&R to conclude that severance is the "majority approach" of the Courts within the Ninth Circuit is just plain wrong.

As mentioned earlier, the R&R relies heavily upon the "persuasive authority" of Arizona, principally relying upon the case of *Third Degree Films v. Does 1-131* – a 2012 opinion penned by Judge Teilborg, which involved more than one hundred defendants.[19]  However, that case is clearly not so persuasive in its home state of Arizona, where the LHF Productions, Inc. addressed this issue head-on and successfully obtained joinder in all twenty (20) of its cases filed in that District.[20]  The foregoing opinion has been all but abandoned by Arizona, as the Court not only permitted joinder in all nineteen (19) cases filed by the Plaintiff,[21] but also ultimately decided to consolidate those cases for purposes of judicial efficiency.[22]  In light of the foregoing facts, we can safely say that the Judge Tielborg's opinion in *Third Degree Films* is either no longer the law of the land in Arizona or is at least distinguishable from the case at hand.

The R&R cites to roughly twenty-six (26) cases to support its contention that the "majority approach" within the Ninth Circuit's is to find joinder improper in BitTorrent cases.[23]  However, of the 26 cases cited, only three (3) were penned within the last four years. Most of the citations were more than five years old. Moreover, all of the cases cited come from only six (6) of the Circuit's fifteen (15) districts: Arizona, Oregon, and the Central, Eastern, Northern and Southern Districts of California.   As already explained, Arizona has reversed course and now

HAMRICK & EVANS LLP

---

[18] If we exclude Nevada from this formula, then 44% of Districts consistently allow joinder, 33% allow joinder sometimes, and 22% do not allow joinder.  However, as noted in Exhibit Y, a little over 77% of the jurisdictions nationwide permit joinder.
[19] 280 F.R.D. 493, 498 (D. Ariz. 2012).
[20] See *LHF Productions v. Does 1-21*, Case CV16-2632 PHX DGC, Order to Show Cause, Memo Reg App of Riding Films, Order, Dkt. Nos. 8, 9, 10 (Ariz., September 6, 2016), Ex Z, AA, AB; *See also* Dockets from LHF and ME2 cases, Ex AF, AG.
[21] *Id*; Ex AF.
[22] *Id*; Ex AG.
[23] R&R at pp. 4-8.

openly permits joinder in BitTorrent litigation.[24]    Meanwhile, Oregon and the Southern and Eastern Districts of California have waivered on the issue, sometimes allowing joinder and sometimes not.[25]    At the same time, Hawaii, and the Eastern and Western Districts of Washington have consistently allowed joinder in these cases.[26]

Even in Oregon, where the Court continues to struggle with the joinder issue, the Court has at least taken efforts to streamline and expedite the discovery process in single Doe cases, issuing a standing order that allows BitTorrent plaintiffs expedited discovery.    The R&R mischaracterizes the foregoing standing order as merely a standing order prohibiting joinder within the District.[27]    In fact, the standing order in question is designed to allow expedited discovery in single Doe cases within the District.    To clarify this, a copy of the standing order is attached hereto for the Court's review.[28]

While one could reasonably argue that the Ninth Circuit is conflicted on this issue and that the state of the law is in flux, for the R&R to state, as it does, that the majority approach of the Ninth Circuit is to prohibit joinder in these cases is not just an over-statement; it is simply wrong.

## IV.    LEGAL ARGUMENT

Rules 19 and 20 of the Federal Rules of Civil Procedure govern the joinder of parties in a civil action.    Rule 19 sets out the circumstances where joinder of parties is required, while Rule 20 set out the circumstances where joinder is permitted.    In the instant case, the Court's concerns are centered on the issue of permissive joinder of defendant parties, governed by FRCP 20(a)(2), which reads, in relevant part, as follows:

> (2) **Defendants**. Persons […] may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

HAMRICK & EVANS LLP

[24] *Supra*, N. 22.
[25] *Supra,* N. 17.
[26] *See e.g., Cell Film Holdings v. Does 1-10*, 1:16-cv-00441-DKW-KSC, pp. 1-12 (HI, Aug, 10, 2016); Cook Productions v. Does 1-8, 1:16-cv-00637-BMK-NONE, pp. 1-3 (HI, Dec. 12, 2016); *Thompsons Film, LLC v. Doe*, 2013 U.S. Dist. LEXIS 112129, at 6 (W.D. Wash. Aug. 7, 2013); *Thompson Film, LLC v. Does 1-35*, 13-CV-0126-TOR, Order Denying Motions to Quash (E.D. Wash. July 12, 2017) Ex. AK.
[27] *See* R&R at p. 8, lines 11-16.
[28] *See* Oregon Standing Order, attached as Exhibit "**AI**."

Then, "once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir., 2013) (*quoting Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.2000). As noted by both the Supreme Court and the Ninth Circuit, "[u]nder the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *quoted in League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d at 917. To this end, "Rule 20 is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe*, 557 F.2d at 917, citing *Mosely v. General Motors Corp.*, 497 F.2d 1330. Moreover, we must interpret Rule 20(a)(2) through the lens of FRCP 1, which requires that each rule be "construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding." Fed. R. Civ. P. 1.

A.   **DEFENDANTS WERE PROPERLY JOINED PURSUANT TO FRCP 20(a)(2), GIVEN THAT DEFENDANTS DIRECTLY PARTICIPATED IN A BITTORRENT "SWARM", ILLEGALLY DOWNLOADING AND SHARING THE SAME COMPUTER FILE AMONGST THEIR SWARM CO-CONSPIRATORS.**

The claims against the Defendants' easily meet the Rule 20 criteria for arising out of the same transaction or occurrence and further turns upon the same, identical issues of fact and law. In this case, the Defendants acted in a concerted coordinated effort, relying upon each other in order to build a stable peer-to-peer swarm, for the express purposes of making unauthorized digital copies of the Plaintiff's copyrighted work. The same, identical issues of fact and law cut across the claims against every one of the Defendants. For these reasons and others explored below, the majority of jurisdictions concur that joinder is proper in these cases.

1.   *The Plaintiff's claims against the Defendants arise out of the same series of transactions/occurrences, because the Defendants acted in concert in a combined effort to commit multiple infringements of the Plaintiff's motion picture.*

"There is no bright-line definition of 'transaction,' 'occurrence, ' or 'series.' … Although there might be different occurrences, where the claims involve enough related

HAMRICK & EVANS LLP

10

operative facts, joinder in a single case may be appropriate." *Robinson v. Geithner*, 1:05-cv-01258, (E.D. Cal., Jan. 10, 2011), citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)("Transaction or occurrence" refers to "similarity in the factual background of a claim"). In construing the meaning of "transaction or occurrence" under Rule 20(a), this Court has previously relied upon the framework handed down by the Eight Circuit in *Mosely v. General Motors Corp.*, noting that the Ninth Circuit has, on several occasions, favorably cited to *Mosely* on joinder issues. *See Waterfall Homeowners Ass'n v. Viega, Inc.* No. 2:11-cv-01498-JCM-GWF (D. Nev., January 30, 2012) (*citing to Mosely v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974); *see also League to Save Lake Tahoe*, 557 F.2d at 917 (9th Cir. 1977).

In Mosely, the Court posited:

> In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule. However, construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test. For the purposes of the latter rule, Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

497 F.2d at 1333 (internal citations omitted).

Under this "logically related" test, the terms "same transaction or occurrence" is interpreted "liberally in order 'to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" *Liegey v. Ellen Figg, Inc.*, 2003 U.S. Dist. LEXIS 9898, at 6 (S.D.N.Y. June 11, 2003). For instance, the Second Circuit, which deploys the same standard, "take[s] a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them." *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989). Nor does "joinder . . . depend on the existence of claims arising from the same incident or occurrence; rather, 'transaction is a word of flexible meaning [that] . . . may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160

HAMRICK & EVANS LLP

1   (W.D.N.Y. 2008) (internal citations omitted).  All that is required "is substantial evidentiary

2   overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*,

3   677 F.3d 1351, 1358 (Fed. Cir. 2012).

4            In the immediate case, the claims against the Doe Defendants more than satisfy

5   the foregoing "logical relationship" test.  The Doe Defendants are accused of infringing the

6   <u>same</u> copy of the <u>same</u> motion picture created from the <u>same</u> initial seed file in the <u>same</u> judicial

7   district via the <u>same</u> method of BitTorrent file sharing during the <u>same</u> period of time and as co-

8   participants of the <u>same</u> BitTorrent swarm of peers.

9            Furthermore, the Defendants in this case, not only interacted with each other within the

10  swarm, but also relied upon each other.  The more users within the P2P network simultaneously

11  sharing the Plaintiff's motion picture meant that the Defendant infringers could enjoy faster

12  downloading speeds and higher quality.  There are clearly commonalities in their cooperative

13  activity furthering the BitTorrent economy of piracy, as each computer participating in the

14  group of peers sharing a given file on BitTorrent connects with every other computer in that

15  group, sometimes directly and sometimes indirectly, as they each share the same file.  Even the

16  *AF Holdings* case (a file sharing case where mass joinder was held as improper), admits that

17  claims made against defendants downloading the same file within the same swarm meet the

18  Rule 20 standard of arising out of the same transaction or occurrence. *See AF Holdings LLC v.*

19  *Doe*, 752 F.3d 990, 998 (DC Cir., 2014) (the Court noted that while Defendants within the same

20  swarm would likely meet the standards for joinder, the Plaintiff had failed to allege that the

21  more than one thousand Doe defendants had participated in the same swarm).

22           Courts throughout the country have come to the same conclusion. *See, e.g., Digital Sin,*

23  *Inc. v. Does 1-176*, 279 F.R.D. at 244 (S.D.N.Y. 2012) (J. Nathan) ("it is difficult to see how . . .

24  a series of individuals connecting . . . with each other or as part of a chain or 'swarm' of

25  connectivity designed to illegally copy and share the exact same copyrighted file . . . could not

26  constitute a 'series of transactions or occurrences' for purposes of Rule 20"). (J. Buchwald)

27  ("We cannot agree that . . . defendants are 'not related in any way except the method that was

28  allegedly used to violate the law.'") (citations omitted); *In re Adult Film Copyright Infringement*

*Litig.*, 2012 U.S. Dist. LEXIS 41260, at 4-5 (S.D.N.Y. Mar. 26, 2012) (J. Forrest) (finding the

HAMRICK & EVANS LLP

"transaction or occurrence" prong met where "plaintiffs have alleged that all defendants . . . traded the exact same file of a copyrighted work . . . in a 'Peer-to-Peer' network that utilizes a 'swarm' system . . . .").

Moreover, whether actions of different Defendants are "discrete and separate" or whether Defendants acted independently without "concerted action" is of little relevance to the Rule 20 analysis.  The Federal Circuit dealt with this issue in *In re EMC Corp*.  In that case, the Federal Circuit reviewed a district court's decision to join defendants in a single patent infringement action.  *In re EMC Corp.*, 677 F.3d at 1353.  The defendants argued that "because there was no concert of action, the claims against them did not arise out of the same transaction or occurrence, as required by Rule 20 . . . ." *Id*.  The Federal Circuit disagreed, noting that "the mere fact . . . a case involves independent actors as defendants does not necessarily bring the case outside the scope of Rule 20." *Id*. at 1357.  According to the Federal Circuit:

> independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. *The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant*.

> *In re EMC Corp.*, 677 F.3d at 1358 (emphasis added).

In other words, Rule 20 is not concerned with whether the Defendants' <u>*acts*</u> arise out of the same transaction or occurrence, but rather whether <u>*"[a] right to relief . . . asserted against them*</u>" (i.e., whether the causes of action) arise out of the same transaction or occurrence.  *See* Fed. R. Civ. P. 20 (a)(2)(A).

In the present case, the causes of action (i.e., joint liability for contributory and direct infringement) arise out of the precise same set of facts giving rise to liability for the underlying direct infringements—plain and simple.  Whether Defendants acted independently or without "concerted action" is not actually a required element of Rule 20(a)(2)(A), nor is the possibility that Defendants acted at different times, as the "transaction or occurrence" prong of Rule 20 does not contain a temporal requirement.  *See, e.g., Malibu Media, LLC v. Doe, 285 F.R.D. 273, 277 (S.D.N.Y. 2012)* ("[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap . . . .") (quoting *Patrick Collins, Inc. v. Doe*, 282 F.R.D. 161, 168 (E.D. Mich. 2012)); *John Wiley & Sons, Inc.*, 2013 U.S. Dist. LEXIS 36359, at 5 (SDNY, 2016);

HAMRICK & EVANS LLP

*Blesedell*, 708 F. Supp. at 1421 ("[The 'transaction or occurrence' prong] may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.") (citations omitted); *Purzel Video GmbH*, 2013 U.S. Dist. LEXIS 179738, at 13 (N.D. Ill., 2013) ("all that Rule 20 requires 'is a logical relationship between the separate causes of action,' not a precondition of acting 'in concert' or 'temporal distance or temporal overlap.'") (citations omitted); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 192277, at 12 (N.D. Fla. Oct. 16, 2012) ("The temporal distance of several months between the download of the files by various Doe defendants does not change this Court's reasoning."). In fact, Rule 20 expressly contemplates a "series" of transactions or occurrences and, thus, that disparate activities of different defendants may give rise to permissive joinder even when they occur at different times. *See* Fed. R. Civ. P. 20 (a)(2)(A). Therefore, the allegations of the present complaint, alleging claims against a swarm of Defendants that acted in concert within a relatively narrow span of time, more than meet the "transaction or occurrence" prong of Rule 20.

> **2.**     ***The Plaintiff's claims against the Defendants turn upon the same questions of law and fact, accusing each of the Defendants of the same, identical tortious conduct: copyright infringement.***

The second prong of Rule 20(a)(2) is satisfied so long as "*any* question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (a)(2)(B) (*emphasis added*). "The rule does not require that *all* questions of law and fact raised by the dispute be common." *Blesedell*, 708 F. Supp. at 1422 (emphasis in original).

In the present case, it is abundantly obvious that there are common issues of fact and law related to all of the Defendants. As described above, the various allegations against the Doe Defendants contain substantial evidentiary overlap, especially when considering the contributory and direct infringement allegations together. Plaintiff is asserting the same copyright against all Defendants and basing liability on the <u>same</u> use of the BitTorrent network by the <u>same</u> Doe Defendants participating in the <u>same</u> swarm to illegally copy and distribute the <u>same</u> copy of the Plaintiff's motion picture. Establishing these facts will require the <u>same</u> evidence and expert testimony, and implicate the <u>same</u> body and application of copyright and procedural law. The evidentiary overlap in this case is self-evident and demonstrates a clear and obvious logical

HAMRICK & EVANS LLP

relationship among the claims asserted against the Doe Defendants.  These issues will invoke the same issues of copyright law and the same set of underlying facts.  Similarly almost all defenses that might be raised by any defendant (plaintiff's ownership, facts of the complaint, investigative data, etc.) will be common to all defendants.  The "common question" prong of Rule 20 is therefore easily met.

At least one court has even suggested that the combined contributory and direct infringement in BitTorrent infringement is so interrelated, that joinder may actually be "required" under Fed. R. Civ. P. 19.  *See* Memorandum and Opinion*, Malibu Media, LLC v. Lee*, No. 12-cv-03900 (D.N.J. May 22, 2013), ECF No. 44 at 14 (refusing to strike affirmative defense of "Failure to Join Necessary and Indispensable Parties" in part because Plaintiff alleged contributory infringement).

### B.   ALLOWING JOINDER IN THIS CASE COMPORTS WITH PRINCIPALS OF FUNDAMENTAL FAIRNESS AND POSES NO PREJUDICE TO ANY PARTY IN THIS CASE.

Even if these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness" or would result in prejudice to either side. *Desert Empire Bank v. Insurance Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).  For the reasons discussed below, most, if not all, discretionary considerations addressed by Courts in the BitTorrent context either do not apply to the present case or have been adequately addressed by additional steps taken by plaintiff to alleviate possible concerns.  Moreover, some of the concerns raised by outlier opinions, like those cited by the Court in its Order to Show Cause, are based on flawed reasoning that contradicts the actual circumstances of BitTorrent litigation.

The majority of Courts throughout the United States allow joinder in BitTorrent cases. *See e.g., Patrick Collins v. Does* 1-15, No.11-cv-02164-CMA-MJW pp.7-8 (D. Colo. Feb. 8, 2012); *Cobbler Nev., LLC v. Does 1-28*,  No. 15-C-7538, pp. 4-11 (N.D. Ill., Jan 15, 2016); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012); *Malibu Media, LLC v. Lee*, No. 12-cv-03900, docket (D.N.J. May 22, 2013) (docket shows Court permitted initial joinder of 62 Defendants, more than a year later, as case appeared to languish, Court threatening to server, but upon Plaintiff's voluntary dismissal of a handful of remaining Doe Defendants,

HAMRICK & EVANS LLP

Court allowed the matter to proceed against multiple named Defendants); *see also ME2 Productions v. Does*, 1-14, 2:16-cv-01062-JLG-EPD, pp. 1-2 (S.D.OH., Nov. 8, 2016); *ME2 Productions v. Does 1-13*, 5:16-cv-00083-EKD, pp. 1-2 (W.D.VA, Dec. 19, 2016); *Cell Film Holdings v. Does 1-10*, 1:16-cv-00441-DKW-KSC, pp. 1-12 (HI, Aug, 10, 2016); Cook Productions v. Does 1-8, 1:16-cv-00637-BMK-NONE, pp. 1-3 (HI, Dec. 12, 2016); *ME2 Productions v. Does 1-10*, 3:16-cv-00702-JHM-DW, p. 1 (W.D.KY, Jan 9, 2017); *Cook Productions v. Does 1-11*, 3:16-cv-00773-JD-MGG, pp. 1-3 (N.D. IN., Dec. 5, 2016); *Cook Productions v. Does 1-10*, 5:16-cv-00924-D, pp. 1-3 (E.D.NC., Dec. 22, 2016); *Cell Film Holdings v. Does 1-12*, 1:16-cv-01216-CCE-JLW, pp. 1-2 (M.D.NC., Oct. 24, 2016); *LHF Productions v. Does 1-27*, 2:16-cv-01219-DBP, p. 1 (UT, Dec. 8, 2016); *ME2 Productions v. Does 1-12*, 2:16-cv-01955-RSL, pp. 1-2 (W.D.WA., Dec. 28, 2016); *Cook Productions v. Does 1-10*, 5:16-cv-00925-D, pp. 1-3 (W.D.NC., Dec. 22, 2016) (Out of a survey of the 40 District Courts that have heard BitTorrent cases, 31 of them allow joinder). Rainey Decl. at ¶41; *see also* Ex. Z.  In fact, even in outlier jurisdictions, where judges have severed defendants in BitTorrent cases, those judges are generally in the minority of their own jurisdictions. *See e.g, Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich., 2012) (Joinder found proper) and *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich., 2012) (Joinder denied).

The reliance on joinder in the overwhelming majority of jurisdictions arises from the simple fact that joinder is preferable to all of the parties involved, including the Court.  Joinder minimizes the administrative burden on the Court. Joinder enables the Plaintiff to more effectively and efficiently conduct discovery.  Most notably, joinder benefits defendants because they "benefit from being able to obtain communal discovery and observe the defenses raised by the other defendants."  *Malibu Media, LLC v. Doe*, 291 F.R.D. 191, 205 (N.D. Ill. 2013) (citations omitted); *see also Thompsons Film, LLC v. Doe*, 2013 U.S. Dist. LEXIS 112129, at 6 (W.D. Wash. Aug. 7, 2013).

### 1. Joinder is in the interests of the Court, the Plaintiff and, most notably, the Defendants; severing the Defendants does nothing but prejudice the rights of the various parties.

Without a doubt, the enforcement of plaintiff's rights is a burden on the courts. Thousands of acts of infringement in this District, causing hundreds of thousands of dollars of

injury, when policed as opposed to being ignored cannot help but strain resources.  However, even though justice may be difficult to administer, the difficulty should not be a barrier to relief. *Marbury v. Madison*, 5 U.S. 137 (1803).  However, joinder of the defendants creates judicial efficiency, particularly at the earlier stages of the litigation.

The defendants presented individually would likely file the same motions to quash, have the same defenses, and there would be excessive redundancy if the Plaintiff were forced to file its cases against each Doe defendant individually.  The savings to the plaintiff in joinder cases are also afforded the Court.  While the administrative burden of the present case is very real, the burden is far less than if the cases were presented individually; and, the burden pales in comparison to the harm endured by Plaintiff and others should the law be ignored.  <u>The interests of justice favor joinder</u>.

### a)    *Joinder serves the interests of the Court.*

Joinder of defendants creates efficiencies for the courts, particularly at the earlier stages of  litigation.  *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252-53 (N.D. Ill. 2011) ("[J]oinder at this stage is . . . in the interest of convenience and judicial economy [and] does not create any unnecessary delay nor does it prejudice any party."); *Raw Films, Ltd. v. Does*, 2012 U.S. Dist. LEXIS 41645, at 13 (E.D. Pa. Mar. 23, 2012) ("consolidating early discovery for the purpose of  determining  the  scope  of  claims  and  defenses  will  foster  judicial  economy."). Discovery in a joined case is far more efficient than conducting the same discovery in multiple cases because joinder "expedites the process of obtaining identifying information, which is prerequisite to reaching the merits of plaintiff's claims." *Voltage Pictures, LLC v. Doe*, 818 F. Supp. 2d 28, 42 (D.D.C. 2011).  "Individual litigations, at least at the early stages of litigation, would be needlessly expensive for both [Plaintiff] and the courts and would frustrate the judicial efficiency policies at the heart of Rule 20." *TCYK, LLC v. Doe*, 2014 U.S. Dist. LEXIS 21026, at 11 (N.D. Ill. Feb. 20, 2014).  Any loss of revenue resulting from a single filing fee is far outweighed by the gains in judicial efficiency afforded by joinder. *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 170987, at 24 (N.D. Ind. Dec. 3, 2012) ("Although the judicial system

may lose revenue from the filing fees . . ., the efficiency and facilitation of discovery that joinder brings, at least at this stage, outweigh this concern.").

Some courts have suggested that joinder may lead to logistical issues affecting case management, such as an inability to accommodate mass numbers of defendants in a single courtroom or at a deposition. *See, e.g., Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011) (severing Does 2-188 because "the court's courtroom could not accommodate all of the defendants and their attorneys, and therefore could not hold case management conferences and could not try all of plaintiff's claims together."); *Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 170 (S.D.N.Y. 2012).

However, in the vast majority of the cases where these concerns were raised, plaintiffs sought to join unmanageable numbers of defendants. *See, e.g., On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 501 (N.D. Cal. 2011) (5011 defendants); *Hard Drive Prods.*, 809 F. Supp. 2d at 1164 (188 defendants); *Dragon Quest Prods., LLC v. Does*, 2013 U.S. Dist. LEXIS 83683, at 2 (D.N.J. June 13, 2013) (105 defendants); *Kill Joe Nevada, LLC v. Does 1-99*, 2013 U.S. Dist. LEXIS 74988, at 10 (N.D. Ga. May 28, 2013) (99 defendants); *Next Phase Distrib., Inc.*, 284 F.R.D. at 170 (27 defendants). Where a plaintiff seeks to join a manageable number of parties, severance is unwarranted. *See, e.g., Malibu Media, LLC*, 285 F.R.D. at 278-79 (recognizing potential logistical issues with joining "hundreds of individual defendants," but not where plaintiff "deliberately [limits] its action" to a manageable number of defendants.); *Malibu Media LLC v. Doe*, 2012 U.S. Dist. LEXIS 189311, at 16-17 (E.D. Mich. Oct. 31, 2012) (finding no potential for logistical issues where "the number of Defendants is not obviously too numerous.").

Logistical issues are not a concern in this case because Plaintiff has limited the action to only 23 (of which, only 4 are remaining) — a reasonable and manageable number of parties. Such issues are even less of a concern here because Plaintiff diligently works to settle out and dismiss various Defendants in an effort to substantially reduce the number of Defendants ultimately at trial. *See e.g.,* Rainey Decl. at 25. Given the low potential for logistical concerns, the drastic remedy of early severance is simply not warranted. The better course of action is to "continue to assess whether the case has become logistically unwieldy as it progresses" and deal

HAMRICK & EVANS LLP

18

with logistical issues if and when they arise. *See Malibu Media LLC*, 2012 U.S. Dist. LEXIS 189311, at 19.

Meanwhile, severance would itself lead to logistical issues for the Court. If Plaintiff were unable to pursue multiple, related defendants in a single action, it would be forced to bring countless single-Doe actions to protect its rights. These actions would involve significant evidentiary overlap, requiring the courts to waste resources resolving the same legal and factual disputes over and over again in different cases and likely result in later consolidation. Indeed, with the growth in Internet piracy and increases in theft of content statistics from the Administrative Office of U.S. Courts show that the number of BitTorrent lawsuits has steadily increased since 2011, reaching more than 50% of all copyright cases filed nationwide in 2015, driven in large part by the reluctance of some courts to permit joinder. Joinder significantly alleviates these issues and reduces strain on the courts.

### b) *Joinder serves the interests of the Plaintiff*

Courts have recognized, not surprisingly, that joinder serves numerous economies for plaintiffs. For one, "joinder . . . is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie." *AF Holdings LLC v. Does*, 286 F.R.D. 39, 55 (D.D.C. 2012). It also allows overlapping issues that would otherwise be litigated repeatedly in multiple actions to be dealt with in a single case. The efficiencies of a joined case also provide Plaintiff with flexibility to consider reduced settlement offers and other settlement arrangements simply not available in single-Doe cases, which do not benefit from economies of scale. Depending on the third party ISPs, plaintiff is able to obtain discovery as a reduced rate for joined cases as it is more economical for an ISP to respond to a single subpoena for ten subscribers than ten subpoenas for single account lookups. And, of course, joining multiple defendants into a single case allows Plaintiff to save substantially on filing fees which, contrary to the suggestion of some courts, is encouraged by the Federal Rules in general and by Rule 20 specifically. *See, e.g.,* Fed. R. Civ. P. 1 (The Federal rules should be construed "to secure the just, speedy, and *inexpensive* determination of every action and proceeding.") (emphasis added); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 341 (D.D.C. 2011) ("Permissive joinder is appropriate 'to promote trial

HAMRICK & EVANS LLP

1   convenience and expedite the final resolution of disputes, thereby preventing . . . extra expense

2   to the parties . . . .") (citations omitted); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS

3   15938, at 10 (D. Colo. Feb. 8, 2012) (recognizing that requiring a plaintiff to pay multiple filing

4   fees would "further [limit] its ability to protect its legal rights . . . .").

5          Severance, on the other hand, would greatly prejudice Plaintiff by introducing

6   "significant obstacles in [its] efforts to protect [its] copyrights from illegal file-sharers and this

7   would only needlessly delay [its] cases." *Digital Sin, Inc.*, 279 F.R.D. at 244 n.6 (citations

8   omitted).   "[R]equiring aggrieved parties to file hundreds or even thousands of separate

9   copyright infringement actions would neither be cost effective for the plaintiffs nor promote

10  convenience or judicial economy for the courts." *Id*. (citations omitted).

11         Clearly, Plaintiff's interests favor joinder, especially in the initial stages of litigation.

12                    *c)*       ***Joinder serves the interests of the Defendants***

13         Where the economy of joinder is truly appreciable, lies in the underlying and rarely

14  discussed benefit that is realized by defendants.   Joinder helps defendants because they "benefit

15  from being able to obtain communal discovery and observe the defenses raised by the other

16  defendants."   *Malibu Media, LLC v. Doe*, 291 F.R.D. 191, 205 (N.D. Ill. 2013) (citations

17  omitted); *see also Thompsons Film, LLC v. Doe*, 2013 U.S. Dist. LEXIS 112129, at 6 (W.D.

18  Wash. Aug. 7, 2013) ("Jointly litigating these claims also allows defendants, many of whom will

19  undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other defendants,

20  and/or benefit from the participation of retained counsel.").   For instance, a Doe Defendant may

21  easily join motions for relief filed by other Doe Defendants (such as motions to dismiss or

22  summary judgment motions) and benefit from Court Orders favoring other Defendants.

23         Nonetheless, some courts suggest that joinder in BitTorrent cases may unfairly prejudice

24  defendants, such as by requiring them to serve papers on multiple parties and unfairly burdening

25  them at trial.   *See, e.g., Next Phase Distrib., Inc.,* 284 F.R.D. at 170; *Pictures v. Does*, 2013 U.S.

26  Dist. LEXIS 66729, at 9-10 (D. Or. May 4, 2013).   As described above, however, Plaintiff has

27  deliberately chosen to proceed against a very limited number of defendants, which will greatly

28  reduce any concerns of unfairness.   Even if this were not the case, and although Plaintiff believes

that joinder is entirely proper and appropriate in this case, ***Plaintiff expressly agrees to sever into***

HAMRICK & EVANS LLP

1 | ***a separate action, without objection, any named defendant that so requests severance***.  Rainey

2 | Decl. at ¶ 33.  This eliminates completely any potential unfairness or prejudice arising from

3 | joinder, as any named Defendant is free to proceed on a separate track if he/she so chooses.

4 | Actions of defendants in other cases also cast doubt on claims of prejudice arising from

5 | joinder.  Despite Plaintiff's policy of permitting defendants to proceed on separate tracks, *not a*

6 | *single Doe defendant has ever taken Plaintiff up on its offer*, despite numerous cases throughout

7 | the country naming hundreds of Doe defendants.  Rainey Decl. at ¶ 34.  The reason for this is

8 | clear.  Defendants seek severance only as a strategic move to dispose of the case early, but once

9 | named, demand joinder in order to take advantage of economies inherent in a joint defense.  *See,*

10 | *e.g., Thompsons Film, LLC*, 2013 U.S. Dist. LEXIS 112129, at 6 ("The only potential advantage

11 | to severance appears to be the hope that plaintiff will give up its claims, no matter how

12 | meritorious, in the face of mounting costs.").

13 | In fact, it is not uncommon for defendants in single-Doe cases to raise an affirmative

14 | defense of *failure* to join parties, and for named defendants in multi-Doe cases to oppose

15 | requests from other defendants to sever.  *See, e.g.,* Order, *Malibu Media, LLC v. Fitzpatrick*, No.

16 | 1:12-cv-22767 (S.D. Fla. Oct. 22, 2012), ECF No. 54 at ¶ 44 (rejecting defendant's affirmative

17 | defense of "Failure to Join an Indispensable Party" based on plaintiff's purported failure to name

18 | other BitTorrent users); *accord* Order, *Malibu Media, LLC v. Weaver*, No. 8:14-cv-01580 (M.D.

19 | Fla. Apr. 8, 2016), ECF No. 129; *see also* Opposition, *Clear Skies Nevada, LLC v. Doe-*

20 | *98.232.166.89*, No. 3:15-cv-02142 (D. Or. Jan. 28, 2016), ECF No. 12 (Doe defendant opposing

21 | motion to sever.).  In one case, a defendant even suggested that single-Doe cases are "much more

22 | nefarious" than multi-Doe cases.  *See* Order, *Voltage Pictures, LLC v. Revitch*, No. 6:14-cv-

23 | 00301 (D. Or. Jan. 23, 2015), ECF No. 46 at 3.

24 | The Copyright Act subjects infringers to notable penalties. Civil penalties have increased

25 | to $150,000 per work in direct response to the proliferation of BitTorrent and Internet piracy. 17

26 | U.S.C. § 504(c).  Jury awards for damages have been significant.  *Capitol Records, Inc. v.*

27 | *Thomas-Rasset*, 692 F.3d 889 (8th Cir., 2012): $220,000 for 24 songs, $9,166 / song. (Note –

28 | There were multiple trials, the first was $220,000 for 24 songs, the second was $1,920,000 for 24

songs, $80,000 per song. The appeals process left the first verdict intact.); *Sony BMG v.*

HAMRICK & EVANS LLP

*Tenenbaum*, 719 F.3d 67 (1st Cir., 2012): $675,000 for 30 songs, $22,500 per song, *Cert denied*, 132 S Ct 2431 (2012); *BMG v. Cox*, 1:14-cv-01611 (E.D.VA., Dec. 17, 2015): $25,000,000 for about 1400 songs. ~$18,000 per song (secondary liability.); *Paramount Pictures Corp. v Davis*, 2006 WL 2092581 (E.D. PA, July 26, 2006), $50,000 for 1 movie.  The implication that a plaintiff gains unfair advantage by reducing the costs at the filing stage by only a fraction of the potential damages available for an individual case should be balanced against the real exposure of the defendants.

Costs and fees for the willful infringement through BitTorrent are properly assessed against defendants. 17 U.S.C. § 505; *Gonzales v. Transfer Techs., Inc*., 301 F.3d 608, 610–11 (7th Cir. 2002) (Posner, J.) ("[W]illful infringements involving small amounts of money cannot be adequately deterred (and remember 'the need in particular circumstances to advance consideration of . . . deterrence') without an award of attorneys' fees. No one can prosecute a copyright suit for $3,000. [W]e go so far as to suggest, by way of refinement of the *Fogerty* standard, that the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees.").  Joinder permits parties to manage cases at a reduced cost and permits a plaintiff to accept settlements in lesser amounts and at times waive all costs, fees and damages.

If plaintiff were forced to proceed against defendants individually, costs and fees (transactions costs) would be higher dictating higher settlements and greater burdens on defendants.  Such actions leading to cries that single party cases are a greater burden on defendants. *See supra, Voltage Pictures, LLC v. Revitch*, No. 6:14-cv-00301 (D. Or. Jan. 23, 2015).

The reality is with joinder cases plaintiffs are incentivized to settle, often for nominal damages with the real exposure to most defendants being the costs and fees associated with their willful conduct, either their own duplicative costs and fees if severed into individual cases, or those assessed against them.

> **2.      *The Concern of Defendants asserting disparate defenses and factual arguments is misplaced and premature; the more efficient and effective approach is to wait for Defendants to enter an appearance and only sever those that raise distinctive issues.***

HAMRICK & EVANS LLP

Some courts contend that joinder should not be permitted in BitTorrent cases because defendants are likely to raise varying and unrelated defenses which could confuse juries and introduce questions of law and fact that are not common among the defendants. *See, e.g., Next Phase Distrib., Inc.*, 284 F.R.D. at 169 ("once John Does are identified by their ISPs, it is very likely that each John Doe will assert different defenses, thereby adding factual and legal questions that are not common among all the defendants."); *Malibu Media, LLC*, No. 7:12-cv-03810-ER, ECF No. 5 at 12 (SDNY, 2013) (J. Ramos) ("[e]ach Doe who denies the allegations is likely to assert entirely independent factual defenses.") (citations omitted).

Prior to the Doe Defendants entering an appearance, it is premature to conclude that they are likely to raise disparate defenses. *See, e.g., Digital Sin, Inc.*, 2012 U.S. Dist. LEXIS 78832, at 7 (J. Furman) (maintaining joinder and agreeing to revisit the issue only "[s]hould an ISP or defendant raise different or conflicting defenses at a later date . . . ."); *see also Digital Sin, Inc.*, 279 F.R.D. at 244 (J. Nathan) (maintaining joinder but noting that "[t]he Court remains open, however, to reconsidering [joinder] at a later date . . . ."). The Court should address this discretionary consideration—if at all—only after the Doe Defendants appear and raise any relevant defenses. *See, e.g., Malibu Media, LLC*, 285 F.R.D. at 278 ("After plaintiff has effected service on defendants and defendants have responded with any relevant defenses, we are free to determine whether the claims against a particular defendant should be severed."). Regardless, the concern of varying defenses is simply not an issue in this case and should it become an issue, plaintiff agrees to feely sever any such defendant.

### 3. *While the Court's Concern over cyber-piracy plaintiffs engaging in coercive tactics is reasonable, there is no evidence of such conduct on the part of the Plaintiff in this or any other case, and eliminating joinder actually does nothing to address this concern.*

Some courts have expressed concern that joinder in BitTorrent lawsuits may lead to coercion of defendants—that is, "there is a fear that regardless of a defendant's actual culpability, he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case . . . ." *Malibu Media, LLC*, 285 F.R.D. at 278 (dealing with pornographic content). However, this concern is more prevalent in cases involving allegations of infringement on pornographic content. Courts have tended to deny

HAMRICK & EVANS LLP

joinder in the instance of adult content, where the stigma of association makes them more susceptible to abuse. *Id.*  However, more recently, even in districts that previously eliminated joinder out of this vary concern, the courts have since recognized that joinder is preferable in BitTorrent litigation for general management and economics for the courts, plaintiffs, *and* defendants when there are no other indicia of abuse. *See e.g.*, *Dallas Buyers Club, LLC v. Does*, 14-cv-1684 (W.D. WA., October 31, 2014); *Elf-Man, LLC v. Does 1-152*, Case No. 13-cv-0507 (W.D. WA., March 26, 2013). Moreover, severance does not address the coercion issue; it merely forces plaintiffs to litigate against defendants separately.  Indeed, as one court noted "whether it is one defendant or one hundred defendants named in a lawsuit, . . . the copyright holder still has the ability to attempt to convince a defendant to settle or to be identified in a public lawsuit." *Malibu Media v. Doe*, 2013 U.S. Dist. LEXIS 59278, at 21 (D. Colo. Feb. 12, 2013).

Even if severance alleviates coercion (which it does not), there is absolutely no evidence that Plaintiff in this case acted coercively or irresponsibly.  It would be fundamentally unfair for the Court to effectively punish Plaintiff for the bad actions of a few unrelated third parties. Indeed, as Judge Buchwald noted in *Malibu Media, LLC v. Doe*, the Court should be "reluctant to prevent [P]laintiff from proceeding with its case based only on a 'guilt-by-association' rationale."  *See Malibu Media, LLC*, 285 F.R.D. at 278 (citing *Third Degree Films*, 2012 U.S. Dist. LEXIS 87891, at 34); *accord Malibu Media LLC*, 2012 U.S. Dist. LEXIS 189311, at 21-22 ("in the absence of case-specific allegations of coercion and/or misidentification, discretionary severance . . . is not warranted."); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 165525, at 9 n.3 (D. Colo. Oct. 25, 2012) (denying severance in part because "there have been no specific allegations of coercion by the Plaintiff.").

However, the potential for coercion in this case is quite low.  Courts are concerned most about coercion where suits involve pornographic content; namely, the potential for innocent parties to pay settlement demands to avoid the embarrassment of being publicly associated with pornography.  *See Malibu Media, LLC*, 285 F.R.D. at 278; *see also Dragon Quest Prods., LLC*, 2013 U.S. Dist. LEXIS 83683, at 17 n.7.  Such a danger simply does not exist here.  The Plaintiff is an affiliate of Millennium Media, the production company behind multiple major motion

HAMRICK & EVANS LLP

pictures including *The Expendables* series of films, *Olympus Has Fallen* and other major productions.  http://www.millenniumfilms.com.    The Subject Motion Picture is not an embarrassing pornographic film, but rather a highly respected, mainstream motion picture staring A-list actors. *see also* http://www.imdb.com/title/tt3522806/fullcredits/.   Even so, Plaintiff will not oppose any request by a Defendant to proceed anonymously, thereby alleviating completely any concern the Court may have regarding potential coercion resulting from the film's content.

Additionally, Plaintiff has no interest whatsoever in pursuing legal action against innocent or young parties, and for this reason, takes every precaution to ensure that parties ultimately named in an action are adults whom the Plaintiff believes to be the actual infringers. For instance, Plaintiff ensures that the accused IP addresses are associated with persistent BitTorrent activity. Rainey Decl. at ¶ 16.   This helps ensure that the named defendants are individuals with consistent and permissive access to the suspect IP addresses, not merely transient guests or unknown parties. *Id.*  This process also helps filter sporadic infringers in favor of the worst of the worst—prolific and habitual users of BitTorrent who likely know the full extent of their wrongdoing.  *Id.*  It is also worth noting that many of the Defendants repeatedly infringed Plaintiff's and others' works, despite receiving multiple Digital Millennium Copyright Act ("DMCA") notices over extended periods of time advising and requesting immediate termination of the infringing conduct.[29] Rainey Decl. at ¶¶ 35-28.   Plaintiff also manages its cases in a responsible manner that avoids the potential for coercion.  Plaintiff routinely dismisses actions against defendants who provide explanations of innocence consistent with data collected by MaverickEye, and where there is a recognized economic hardship, Plaintiff and its affiliates have agreed to waive costs, fees and damages where a defendant admits liability, expresses remorse, and promises to cease infringing activity.

Certainly, there is no evidence of the Plaintiff engaging in any coercive or other untoward conduct.  Moreover, given the circumstances of this case, there is very little risk of the Plaintiff

HAMRICK & EVANS LLP

---

[29] Pursuant to 17 U.S.C. § 512, in certain cases, ISPs may limit their liability for copyright infringement committed by their customers, *inter alia*, if they provide a means by which to receive DMCA notices from copyright owners. These notices are typically received by the ISPs via mail or special email addresses.  The Providers then forward the notices to the infringing customers without divulging the customers' identities to the copyright owners.  To the extent a particular customer is not the infringer, said customer should be expected to take immediate steps to cease the infringing activity after receipt of such a notice, such as by notifying family members and ensuring that access to any home router is secure

1   engaging in such conduct.  Finally, even if there were a risk of coercive conduct on the part of
2   the Plaintiff, eliminating joinder would do nothing to alleviate that conduct.  Eliminating joinder
3   would merely serve to drive up the costs of litigation, overburden our Court, and ultimately
4   prejudice the rights of the Defendants.

5   **VI.**    **CONCLUSION**

6           For the foregoing reasons, the Plaintiff respectfully requests that the Court not follow the
7   Recommendations of Judge Koppe and allow this case, and the Plaintiff's other cases to proceed
8   on their merits.  Moreover, the Plaintiff requests an opportunity to argue this matter in open court
9   and address any direct concerns that the Court may have.

10          Respectfully submitted this 27th day of June, 2017.

11                                                  /s/ Charles C. Rainey
                                                    CHARLES C. RAINEY, ESQ. (Bar. No 10723)
12                                                  crainey@hamricklaw.com
                                                    HAMRICK & EVANS LLP
13                                                  7670 W. Lake Mead Blvd., Ste. 140
                                                    Las Vegas, Nevada 89128
14                                                  +1.702.425.5100 (ph)/ +1.818.763.2308 (fax)
15                                                  *Attorney for Plaintiff*

HAMRICK & EVANS LLP

**DECLARATION OF CHARLES C. RAINEY IN SUPPORT OF
PLAINTIFF'S OBJECTION TO
THE MAGISTRATE'S JUDGE'S REPORT AND RECOMMENDATIONS
(HEARING REQUESTED)**

I, CHARLES C. RAINEY, the undersigned individual, hereby make the following declaration:

1.   I am over the age of 18 and am otherwise competent to make this declaration.

2.   This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3.   Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the statements made herein are true and correct, except for those matters qualified as stated under my informed belief, and, as to those matters, I believe them to be true.

4.   I am the attorney of record for the Plaintiff in the above-captioned case, ME2 PRODUCTIONS, INC., a Nevada corporation.

5.   The Plaintiff has hired other attorneys in other jurisdictions to file similar cases, such as Illinois, New York, Oregon, Washington, Arizona, Colorado, and Texas, with whom I have been in contact, in an effort to coordinate our efforts in these cases and develop a set of best practices in anti-piracy litigation.

6.   I am informed and believe that Plaintiff is the producer of the feature length motion picture, "Mechanic 2: Resurrection."

7.   This belief is supported by the copyright registration for the motion picture on file with the United States Copyright office as well as the fact that the owners of the Plaintiff company are Trevor Short and Avi Lerner, both of whom are identified in the credits of the motion picture as its producers.

8.   This case arises from the Plaintiff's discovery that its film, while still in theatrical release, had been pirated and illegally shared over peer-to-peer file sharing networks by countless users throughout the United States and throughout the world.

9.   In an effort to track and identify the individual infringers responsible for the illegal copying and sharing of its motion picture, Plaintiff engaged the investigative services of

HAMRICK & EVANS LLP

MaverickEye, a company organized and existing under the laws of Germany, with its principal address at Heilbronner Strasse 150, 70191 Stuttgart, Germany.

10. I am informed and believe that MaverickEye employed its software to surveil Internet traffic within the BitTorrent network to identify, analyze, archive and document unauthorized copying and distribution of the Plaintiff's motion picture.

11. The data provided by MaverickEye confirmed that the Defendants (originally identified in the present case as John and Jane Does) used BitTorrent client software to purposefully search for and intentionally copy and download unauthorized and infringing copies of the subject film.

12. To date, MaverickEye has identified 51,462,897 instances of infringement of the Plaintiff's motion picture worldwide, including 50,014 instances of infringement occurring within the State of Nevada.

13. The information provided by MaverickEye further confirmed that each Doe Defendant then made copies of the subject motion picture available for downloading by other BitTorrent users, thus willfully joining in a collective effort (known as "a swarm") to distribute infringing copies of the Plaintiff's motion picture to one another and countless other peers of the swarm for download and distribution during the period of infringement, resulting in the unauthorized, viral dissemination of the Plaintiff's motion picture.

14. However, prior to filing the present action, Maverickeye was only able to identify the individual infringers by their respective IP Addresses.

15. Using geo-location information, MaverickEye then indexed the data by jurisdiction, allowing Plaintiff's counsel access to the full database of infringements occurring within the State of Nevada.

16. Then, weighing a number of factors, I narrowed the pool of Defendants to the one to two percent (1-2%) of the most egregious infringers within each swarm; I cannot share in open Court at this time the specific factors that I rely upon to determine the most egregious BitTorrent users, since divulging such information would likely result in users manipulating their data to evade liability.

HAMRICK & EVANS LLP

17. . I then further separated out those egregious infringers within each swarm into yet smaller groups of approximately ten (10) to thirty (30) IP Addresses.

18. In each group of ten (10) to thirty (30) infringers, the identified IP Addresses were caught sharing the same digital file, containing the same copy of the Plaintiff's motion picture, over the same peer-to-peer file sharing network, as part of the same so-called "swarm," within the same jurisdiction, within the same finite period of time (usually a period of about two weeks).

19. In order to ensure the accuracy of the information collected, before filing any given lawsuit, I then transmitted the data sets related to the proposed Defendants to a third party consultant, Daniel Arheidt, to review and confirm.

20. I am informed and believe that Mr. Arheidt then reviewed the Defendant data provided by me, crosschecked such data against the database compiled by MaverickEye, and confirmed the accuracy of the information I provided.

21. Only after confirming the accuracy of the data with both MaverickEye and at least one independent consultant, do I move forward with any particular lawsuit.

22. On behalf of the Plaintiff, I filed the present case against a group of 21 Defendant IP Addresses on March 13, 2017.

23. Shortly thereafter, I promptly filed the Plaintiff's *ex parte* motion seeking to open discovery for the limited purpose of unveiling the true identities of the Doe Defendants.

24. The Court subsequently granted the Plaintiff's motion for discovery, and I then served a subpoena upon the Defendants' Internet Service Provider ("ISP").

25. Since receiving the subpoena response from the Defendants' ISP, I have successfully narrowed the case from 21 to 13.

26. While I removed some Defendants from the case as a result of reaching settlement, still others I removed due to various circumstances unique to those Defendants.

27. If, upon further investigation, I discover that the situation of any given Defendant is distinctly different from the situation of other Defendants within a given case (raising distinct issues of fact or law), then I typically dismiss those individuals from the case; that said, it

HAMRICK & EVANS LLP

3

should be noted that the arguments raised by most defendants are generally quite similar; it is rare to find a defendant raising a distinctive issue of law or fact in its defense.

28. In some instances, I may abandon the Plaintiff's claims against a given Defendant, noting that the issues raised by the dismissed defendant provide a strong defense or make litigation impractical.

29. While in other instances, I may elect to dismiss a given Defendant from the case without prejudice, preserving the right to pursue that Defendant separately at a later date.

30. Likewise, if a Defendant answers the Complaint and at that time suddenly asserts unusual or distinctive arguments, it is my intent (and the intent of the Plaintiff) to sever such Defendants into a separate lawsuit.

31. To this end, I have filed notices of non-opposition with the Court in cases where parties have asked to be severed.

32. However, it must be noted that it is rare for a Defendant to request to be severed.

33. Furthermore, I (under the direction of the Plaintiff) maintain a strict policy that if, in any case, a named Defendant requests that he/she be severed from a case and tried separately, I will not object or oppose any such request.

34. I am informed and believe that, while the Plaintiff has made this open offer to sever individual Defendants in cases throughout the country, Defendants have rarely taken up the offer.

35. Finally, it should be noted that the Plaintiff has enacted a notice system throughout the United States that provides BitTorrent users with an early warning of possible litigation.

36. The notice system is operated through the Internet Service Providers, so that user identities are not revealed to the Plaintiff prior to litigation.

37. Under the notice system, when the Plaintiff's expert identifies an infringing IP Address, it dispatches an email notice to the ISP associated with that IP Address, and the ISP then forwards that email notice to the individual Internet subscriber, notifying him/her of the infringement and the risk of possible litigation.

HAMRICK & EVANS LLP

4

38. In each of the cases brought on behalf of the Plaintiff, where the infringement occurred on or after September 1, 2016, the subscriber would have received at least one email warning in advance of the Plaintiff filing suit.

39. Attached hereto as Exhibits "**A**" through "**AM**" are the various Court Orders, pleadings and related documents cited in the foregoing response, which are not readily available on Lexis Nexis, Westlaw, Fastcase or any official reporter.

40. I am informed and believe that the attached exhibits are true and accurate copies of the orders, pleadings and other papers as filed with their respective electronic filing systems and as available on the Pacer system.

41. Further affiant sayeth naught.

Dated this 27th day of June, 2017.

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ./MBA/LL.M.
Nevada Bar No. 10723

HAMRICK & EVANS LLP

5